## Swavely v. Vandegrift

*Donald W. Van Artsdalen*, for plaintiffs.

*William M. Power*, for defendants.

*Arthur M. Eastburn, Jr.*, and *William H. Lowery*, for additional defendant, Calcinator Corporation.

SATTERTHWAITE, J., June 27, 1958.—Plaintiffs have brought this action of trespass to recover damages allegedly resulting from a fire on January 24, 1955, in their dwelling house in Solebury Township, this county, stated to have been caused by the negligent installation of a household disposal device known as a Calcinator. They had purchased the incinerator a few days earlier from defendants Arthur Vandegrift and William Vandegrift, trading as Vandegrift Auto Supply, the retailer who also had installed the same. Vandegrifts' place of business is in Doylestown, also this county. Vandegrifts have attempted to join the distributor and the manufacturer as additional defendants on the theory that the latter were negligent, either in the failure to provide adequate installation instructions or in the manufacture of the product.

The distributor was S. H. French Distributors, Inc., a corporation with its principal place of business in Ardmore, Montgomery County. After apparently regular service of the writ and complaint joining it as an additional defendant, it caused a general appearance to be entered on its behalf and is not involved in the present jurisdictional question.

The alleged manufacturer, also proposed to be joined as an additional defendant, is Calcinator Corporation, a foreign corporation not registered to do business in Pennsylvania. Two returns of service of process upon it have been made by the sheriff. The earlier, through deputization of the sheriff of Montgomery County, recites that on April 25, 1956, copies of the writ and

complaint were handed to one Raymond Pask as agent for the corporation at its place of business in Ardmore, Montgomery County. The depositions taken in support of the preliminary objections thereto as filed by Calcinator Corporation clearly disclose that the office at Ardmore is that of S. H. French Distributors, Inc., and not that of Calcinator Corporation. Such transcript also demonstrates that the latter corporation has never had an office or usual place of business within this Commonwealth, that Pask was not an executive officer, partner or trustee of the corporation and that he was not authorized to receive service of process on its behalf. It follows that this attempted service was not in compliance with Pa. R. C. P. 2180, and this court obtained no jurisdiction thereby. The preliminary objections filed May 29, 1956, by Calcinator Corporation on this ground accordingly must be sustained. Since it is a foreign corporation, the historic rule prohibiting the collateral impeachment of the sheriff's return is not controlling: Yorty v. Gugger, 7 Bucks 224, 225, and cases cited.

Upon the taking of depositions in support of such preliminary objections in November 1956, Vandegrifts apparently recognized the weakness of their position. Without awaiting the disposition thereof, they obtained an extension of time and permission by leave of court to serve Calcinator Corporation through the Secretary of the Commonwealth, and also by registered mail to its Michigan place of business, pursuant to section 1011B of the Business Corporation Law of May 5, 1933, P. L. 364, as added by section 22 of the Act of September 26, 1951, P. L. 1475, as amended, 15 PS §2852-1011B, on the theory that, although an unregistered foreign corporation, it is doing and had done business in this Commonwealth. After service on January, 23, 1957, procedurally complying with these authorities, Calcinator Corporation filed further prelim-

inary objections denying its conduct of business in Pennsylvania and challenging the jurisdiction of the courts of this State. Additional depositions were taken in support of this position in November 1957, and the question has now been argued before the court on the transcript thereof.

Calcinator Corporation is a manufacturing concern incorporated in the State of Michigan and having its sole plant and offices in Bay City, Michigan. It markets its product, the several models of household incinerators, through distributors located in various parts of the country. Such distributors, however, are not mere sales agents for the manufacturer. They do not sell on consignment, but, to the contrary, they are separate and independent firms engaged as wholesalers not only in Calcinator Corporation products but also in the household appliance field generally. If and when their orders therefor are accepted by Calcinator Corporation, they purchase the incinerators from the manufacturer by outright sales transactions, title passing upon delivery f.o.b. Bay City, Michigan. The distributors, through their own independent sales organizations, then resell the same to retailers of their own choice and in the selection of which Calcinator Corporation has no voice or control. The retailers, in turn, make the ultimate sale and installation to the final household user with whom Calcinator Corporation has no contact whatsoever. Although retail prices are "suggested" by the manufacturer, no legally binding commitments are in effect in this connection, and, in fact, the devices retail at varying prices in different localities according to local practices and policies. No sales quotas are imposed upon the distributors by the manufacturer.

Two of such distributors are located in Pennsylvania, and a third does business in up-State New York with a sales territory including certain portions of

western Pennsylvania. The purchases of these three distributors amounted to approximately four percent of the manufacturer's gross sales of $835,000 in its fiscal year ending in 1956. One of the distributors is S. H. French Distributors, Inc., the other additional defendant in these proceedings as above mentioned. It, in common with all other distributors, has a written nonassignable contract with Calcinator Corporation, terminable upon 10 days written notice by either party to the other whether with or without cause, by which French is named the exclusive distributor of Calcinators in a territory comprising specified counties in southeastern Pennsylvania (including Bucks), southern New Jersey and the whole State of Delaware.

The only provisions of this agreement by which Calcinator Corporation imposes any restrictions upon the distributor are clauses obligating the latter "to devote its best efforts" in the promotion and sales of Calcinators in its territory and to maintain an inventory thereof "in acordance with the needs of the territory hereby granted," prohibiting the removal of the manufacturer's name plate or other markings on the product, agreeing to abide by the manufacturer's advertising program which, in part, is financed by contributions from both the manufacturer and the distributor, requiring monthly reports of sales, inventories, names of dealers and other matters as may be required from time to time, and forbidding the sale or promotion of similar products of others during the existence of the agreement. It also contains the following specific provision:

"This agreement is not intended to, nor does it, make distributor an agent of the manufacturer in any respect. Distributor shall not transact any business in the manufacturer's name and is expressly not authorized to incur any obligation and/or liability for or against manufacturer."

Calcinator Corporation also has arrangements with individuals who are designated as "manufacturer's representatives" whereby the latter, occupying the apparent legal relationship of independent contractors, are named as the exclusive representatives of the manufacturer to survey the trade for the purpose of finding and recommending distributors for the manufacturer's consideration and extension of distributorship contracts. Such representatives have no authority to effectuate the distributor relationship, nor in any other way to obligate Calcinator Corporation whether for the sale of its products or otherwise. They do not even solicit orders from the distributors. In some cases they also represent other manufacturers in other lines of business. The representative has the further duty of providing a liaison between the manufacturer and the distributor in formulating and carrying out promotional campaigns for the Calcinator and also in advising and training the distributor's sales personnel in the technical details of product knowledge. He has no contact with retailers or the ultimate household user of the device, does not participate in actual installations and has no power either to take orders for the product or to collect amounts due from distributors by reason thereof.

Two of the manufacturer's representatives functioning in this fashion had Pennsylvania activities during the time relevant to the problems presently before the court. One of these lived in Pittsburgh; his territory included the States of Virginia, West Virginia and Kentucky, together with specified portions of New York, Ohio and western Pennsylvania. The other was Raymond Pask, the individual upon whom the earlier, and, as we now have held, ineffective, service was attempted by the sheriff when he happened to be at the French place of business in Ardmore. He resided in Philadelphia. His territory covered all of the New

England States plus New Jersey, Delaware and the trading areas of certain cities in Pennsylvania (including Philadelphia), New York, Maryland and the District of Columbia. His written agreement with Calcinator Corporation, similar to that which it has with all such representatives, was nonassignable, prohibited the "handling" of competitive lines of products, but not household or other appliances which were noncompetitive, required reports of activities as specified, but negatived the exercise of any control over the time or manner of carrying on such activity, provided for compensation from Calcinator Corporation at the rate of 10 percent of completed sales to distributors in the territory, but without reimbursement for any expenses, and permitted termination of the relationship, subject to a six months' noncompetition covenant if terminated by the representative, upon 30 days written notice by either party to the other. It also contained the following specific provision:

"Manufacturer's Representative shall not transact any business in Company's name and is not authorized to incur any obligation or liability for or against Company."

From the depositions of the executive vice president of Calcinator Corporation by which the foregoing agreements were identified and made a part of the record and which further elaborated upon the activities and status of the distributors and manufacturer's representatives, it also appeared that Mr. Pask, in August 1956, subsequent to the abortive attempt to make the first service of process at the French offices but prior to the second purported service through the Secretary of the Commonwealth and by registered mail, had severed his relationship as manufacturer's representative. On the latter date his territory and duties with respect thereto had been taken over by one James Hebert. The latter performed exactly the same functions and had

precisely the same powers and duties as had Pask, but instead of being an independent contractor located in Pennsylvania and working entirely on his own time and at his own expense, Hebert lived in Michigan and was a salaried employe of the sales department of Calcinator Corporation itself, and, of course, was subject to its direction and control but without authority to bind it contractually or otherwise.

Apart from the activities of the distributors and manufacturer's representatives just outlined, and the fact that an undisclosed fraction of four percent of its product found its ultimate consumer market in Pennsylvania, Calcinator Corporation had, so far as the record discloses, absolutely no association or connection with this Commonwealth. None of its property, tangible or intangible, was or ever has been located in this State; it has no office or plant of any kind in Pennsylvania; none of its officers or directors resides or conducts any of the corporate functions here.

Section 1011B of the Business Corporation Law of May 5, 1933, P. L. 364, added by section 22 of the Act of September 26, 1951, P. L. 1475, as amended, 15 PS §2852-1011 B, provides, in part, as follows:

"B. Any foreign business corporation which shall have done any business in this Commonwealth, without procuring a certificate of authority to do so from the Department of State, shall be conclusively presumed to have designated the Secretary of the Commonwealth as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising out of acts or omissions of such corporation within this Commonwealth. On petition, alleging conduct of business within the Commonwealth by any corporation not qualified by the Secretary of the Commonwealth or having otherwise designated him as agent for the service of process, the court of the county in which the action is instituted shall authorize service to be made

upon the Secretary of the Commonwealth. Service shall be made by the sheriff of such county, by transmitting to the Secretary of the Commonwealth, and to the defendant at his last known residence or place of business, by registered mail, return receipt requested, a copy of such process, together with a copy of the petition and order of the court, properly certified as such by the prothonotary. The return receipt by the post office department shall be evidence of service under this act."

The judicial interpretation of the concept of "doing business" in connection with questions of jurisdiction of the courts of this Commonwealth over foreign corporations has often been enunciated in decisions of the Supreme Court. The leading case is Shambe v. Delaware & Hudson R. R. Co., 288 Pa. 240, decided in 1927, which set forth the criteria at some length. This decision was amplified and followed in New v. Robinson-Houchin Optical Company, 357 Pa. 47; Lutz v. Foster & Kester Co., Inc., 367 Pa. 125; Law v. Atlantic Coast Line Railroad Company, 367 Pa. 170; Pellegrini v. Roux Distributing Co., Inc., 170 Pa. Superior Ct. 68. Compare Motch & Merryweather Machinery Company v. Pittsburgh School District, 381 Pa. 619, which was not a service of process case but did involve the determination of whether or not a foreign corporation was doing business under the analagous considerations applicable for tax purposes. Certain aspects of the problem presently raised were summarized in the Lutz case, at page 129, as follows:

"One definitely recognized principle, presently important, is that the mere solicitation of business within the Commonwealth did not constitute 'doing business.' . . . There must be 'other activities' in addition to the solicitation of business to make a foreign corporation's conduct the doing of business within the Commonwealth, . . . Such 'other activities' do not consist of acts

of courtesy performed by business solicitors, without compulsion, in order to satisfy or accommodate customers. Nor do they reside in the number of solicitors employed or the character and extent of the facilities provided them for carrying on their solicitations such as office space and office equipment of desks, typewriters, filing equipment and telephones, or in the identification of the company or its representatives emblazoned on the office door or printed in the telephone directory. *The criterion is, rather, whether the local solicitors have authority to bind the foreign corporation by which they are employed.*" (Italics supplied.)

If the principles established by these decisions represented the state of the law applicable to the situation presented in the instant case, Calcinator Corporation clearly would not be subject to the jurisdiction of this court. Neither the distributors nor the manufacturer's representatives, nor even Hebert, its own employe, who constituted the sole persons or corporations that ever have carried on any activity in Pennsylvania which could conceivably or most remotely be attributed to the slightest degree to the foreign corporation or its operations, had any authority, real, implied or apparent, to bind it in the slightest manner. Vandegrifts do not seriously contend otherwise. They do argue, however, that another provision of the same Act of Assembly, which in 1951 added section 1011B above quoted, also extended the prior decisional concept of "doing business" in this connection. Section 1011C, likewise so added to the Business Corporation Law by said Act of 1951, provided as follows:

"C. For the purposes of this act, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose with the intention of thereby initi-

ating a series of such acts, shall constitute 'doing business.' "

Calcinator Corporation counters, however, with the two-pronged argument, first, that section 1011C cannot now be considered to supersede the judicial concept of "doing business" enunciated in the above cases because such legislative definition itself was repealed by the Act of July 11, 1957, P. L. 711, with no saving clause for pending cases, and secondly, that in any event it was not doing business in Pennsylvania even under the statutory definition.

We must reject the first portion of this position. Inasmuch as section 1011C was in effect on the date of service through the Secretary of the Commonwealth in these proceedings, it cannot now be disregarded even though subsequently repealed. This question is controlled by section 96 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §596, which provides:

"The repeal of any civil provisions of a law shall not affect, or impair any act done, or right existing or accrued, or affect any civil suit, action or proceeding, pending to enforce any right under the authority of the law repealed. Such suit, action or proceeding shall and may be proceeded with and concluded under the laws in existence when such suit, action or proceeding was instituted, notwithstanding the repeal of such laws, or the same may be proceeded with and concluded under the provisions of the new law, if any, enacted."

The purported service now challenged was an "act done . . . under the authority of the law repealed," if Vandegrifts' position be correct on the merits, and, on the same assumption, pending litigation dependent upon the right to proceed judicially in the courts of Pennsylvania against this foreign corporation would be affected by the repeal. Cases decided since 1937 and relied upon by Calcinator Corporation as leading to the

conclusion that jurisdiction, even though once acquired, would fall with the repeal of the enabling statute, are either from Federal or other jurisdictions not subject to this Pennsylvania rule of construction, such as Bruner v. United States, 343 U. S. 112, or are criminal cases expressly not covered by section 96 of the Statutory Construction Act, such as Commonwealth v. Gross, 145 Pa. Superior Ct. 92.

Calcinator Corporation's second position, however, is more substantial, and after due consideration of all the circumstances we believe it to be legally sound. Notwithstanding the more extended statutory definition of "doing business" inserted by the Act of 1951, we believe that Calcinator Corporation is not amenable to suit in Pennsylvania on the present record.

The provisions of section 1011C have never been passed upon by the appellate courts of this State so far as we can ascertain. They have been considered in certain of the lower courts and in the Federal courts in cases involving Pennsylvania law. Most of these latter decisions, however, are of no assistance in the present litigation. Thus, in Cieri v. Dante, 54 Lack. Jur. 33, and Crevar v. Duquesne Motor Coach Lines, 103 Pitts. L. J. 124, although the statutory definition was mentioned in passing, it is clear from the opinions that jurisdiction would have been upheld even without the Act of 1951 by reason of the binding nature of the authority of an officer or employe of the foreign corporation and the extended nature of the activities thereof within this State.

In Ramey v. Donora Southern Railroad Co., 13 D. & C. 2d 732; Kulicke v. Rollway Bearing Company, Inc., 131 F. Supp. 572; and Solt v. Interstate Folding Box Company, 133 F. Supp. 7, the foreign corporations solicited business through offices which they maintained in their own names, staffed with their own employes and furnished with their own equipment. In

Jenkins v. Dell Publishing Company, Inc., 130 F. Supp. 104, 132 F. Supp. 556, 143 F. Supp. 952, defendant corporation continuously and systematically maintained its own employes as liaison representatives, eight in number, within the Commonwealth of Pennsylvania to promote a large volume of sales of its magazines to distributors. In all of these cases, in short, the corporate activities themselves were to a substantial degree carried on in each instance by and under the direct auspices of the corporation itself; in effect, the corporate contacts in Pennsylvania in each case were effected through its own agents and were more or less constant and direct, not through outsiders or merely intermittent and incidental.

In the instant case, however, there is no evidence whatsoever that Calcinator Corporation ever had "entered" this Commonwealth or done any series of similar acts, or even a single act, through its own officers or employes, whether authorized to bind it or not and whether for its pecuniary benefit or not, until Hebert's appointment as the substituted manufacturer's representative in August 1956, which was long after the time and occasion of the operative facts constituting the alleged cause of action arising in or prior to January of 1955. Neither S. H. French Distributors, Inc., nor Raymond Pask, was an agent or employe of Calcinator Corporation; both were separate and independent parties whose activities in connection with the marketing of the incinerators were not subject to such restrictions as justifiably to permit the conclusion that Calcinator Corporation possessed the degree of control requisite to constitute a master servant or principal agent relationship over either. Obviously, an impersonal corporate entity organized and located in another jurisdiction can be said, in the words of the statute, to have "entered" the State of Pennsylvania only if its

agents or property have been physically present therein on the relevant occasion.

The fact that Hebert succeeded Pask in 1956 and was an actual employe of Calcinator Corporation is immaterial for present purposes. His activities at that late date, however they may be characterized, did not constitute any "acts or omissions of such corporation within this Commonwealth" which could possibly be alleged to give rise to the cause of action herein asserted, and hence they fail to bring the case within the express condition stated in section 1011B authorizing service of process through the Secretary of the Commonwealth "in any action arising out of" acts or omissions of the corporation.

The only post-1951 case involving Pennsylvania law which we have found or to which we have been referred which casts any doubt whatsoever upon the foregoing conclusions is Florio v. Powder Power Tool Corp., 248 F. 2d 367, decided by the Third Circuit Court of Appeals on September 12, 1957, in an opinion by Chief Judge Biggs. That was a personal injury case seeking to recover damages for an accident on a construction operation in Pennsylvania alleged to have resulted from the negligent design and manufacture of a power-operated tool produced by defendant, an Oregon corporation. Suit was commenced in the United States District Court for the Eastern District of Pennsylvania upon diversity grounds, and service was made under the Act of 1951, supra, through the Secretary of the Commonwealth. Defendant moved to dismiss the proceeding on the ground that the statute was inapplicable since it had not done business in Pennsylvania. The district court granted the motion, but on appeal the circuit court reversed, holding that defendant's relationships within the State were sufficient and that the statute did not violate consti-

tutional due process or the commerce clause as applied to the facts and circumstances disclosed by the record.

The Florio case is similar to the case at bar in that the foreign corporation as such had no ties with Pennsylvania other than its contractual relationship with a distributor of its product in the State and its utilization of a "regional representative" who operated therein. With these bare facts, however, the similarity ceased. The distributor's agreement in the Florio case in fact practically constituted it a completely subservient local arm of the out-of-State manufacturer: It was required to make sales and render service within its territory in the manner recommended by the manufacturer; all prices and discounts were strictly regulated; it was required to maintain certain unimpaired working capital and the manufacturer in its sole discretion could compel the capital investment account to be increased; it was further obligated to carry liability insurance against damage resulting from defects in the manufacturer's products distributed by it; it was subject to sales quotas; its distributorship was subject to unilateral termination if its business performance did not satisfy the manufacturer or if the sales quotas were not met. Similarly, the "regional representative" was not only directly employed by the manufacturer as its own employe, but he engaged in Pennsylvania activity with such regularity that the company's own officials regarded them as a "continuing process." He not only instructed the distributors and their sales organizations, but also made repairs and adjustments for them and for purchasers from them.

In short, the Florio case, in its controlling features, presented a totally different situation from that with which we are here concerned. No such implicit agency arises from either the contract provisions or the factual operations or relationships between Calcinator

Corporation and its independent distributors and manufacturer's representatives. Nothing in this record requires us to negative or disregard the express provisions of the respective agreements that neither was to act as the foreign corporation's agent for any purpose.

In conclusion, it should be pointed out that we do not decide this case on any constitutional grounds. All we hold is that Calcinator Corporation has not been shown to have "entered" this Commonwealth or done any "acts" therein through its agents or employes and therefore is not within the definition of "doing business" contained in either section 1011C or the prior decisions of the Supreme Court of Pennsylvania. Accordingly, since service of process under section 1011B is expressly conditioned upon the corporation's having done business within this State, the within service was unauthorized and invalid. Whether or not the legislature might make other provisions for acquiring jurisdiction over nonresident firms whose economic activities in this State, whether technically "doing business" or not, would render it desirable that they be subjected to suit here is not before us. For the constitutional considerations and limitations which might be involved in that connection, see International Shoe Co. v. State of Washington, 326 U. S. 310; Travelers Health Association v. Virginia ex rel. State Corporation Commission, 339 U. S. 643; Perkins v. Benguet Consolidated Mining Co., 342 U. S. 437. But even though Pennsylvania might not be precluded by the due process or commerce clauses of the Constitution of the United States from legislatively authorizing the assertion of jurisdiction over a foreign corporation in circumstances such as here presented, the fact remains that it has not done so. Compare Partin v. Michaels Art Bronze Co., Inc., 202 F. 2d 541.

## Order

And now, June 27, 1958, for the reasons stated in the foregoing opinion, it is ordered that Calcinator Corporation's preliminary objection filed May 29, 1956, that it was not properly served with process under Pa. R. C. P. 2180, be and hereby is sustained.

It is further ordered that Calcinator Corporation's preliminary objection filed March 12, 1957, that it was not properly served with process under the Business Corporation Law be and hereby is sustained.