Namie *v.* DiGirolamo (et al., Appellant).

Argued September 30, 1963. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Herbert Grigsby,* with him *William J. Lancaster,* for appellant.

*William S. Schweers,* with him *McArdle, Harrington and McLaughlin,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, November 27, 1963:

Belgrade Shoe Company, a non-registered foreign corporation, appeals from an order of the Court of Common Pleas of Allegheny County dismissing its preliminary objections which raised the question of jurisdiction over the person. Service of process was made upon the Secretary of the Commonwealth pursuant to the Act of May 5, 1933, P. L. 364, §1011, as amended, 15 P.S. §2852-1011 (Supp. 1962).[1]

---

[1] The pertinent portions of the statute provide:

"B. Any foreign business corporation which shall have done any business in this Commonwealth, without procuring a certificate of authority to do so from the Department of State, shall be conclusively presumed to have designated the Secretary of the Commonwealth as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising out of acts or omissions of such corporation within this Commonwealth. . . .

The "acts or omissions" of Belgrade are alleged to have arisen out of an automobile collision between Lillian Namie and Henry T. DiGirolamo on May 27, 1960, at the intersection of Sixth Avenue and Grant Street, Pittsburgh. The complaint in the trespass action which followed alleged that DiGirolamo was acting within the course and scope of his employment with Belgrade and upon the business of that corporation at the time of the collision. (The complaint, of course, alleged acts of negligence on the part of principal and agent.)

At the request of the court below, Belgrade submitted an affidavit of its president to support its preliminary objections. The affidavit alleges the following material facts:

Belgrade is a Maine corporation engaged in the manufacture and sale of shoes; it has no employees or agents within Pennsylvania. From 1950 to July 29, 1960, Henry T. DiGirolamo was a manufacturer's representative for Belgrade Shoes in Pennsylvania, West Virginia, Western New York, and parts of Ohio and Maryland. Mr. DiGirolamo resided in Pittsburgh and was advertised in the classified telephone directory there as "Belgrade Shoe Co. Moxees Division, Representative-Henry T. DiGirolamo."

The affidavit further avers that no written contract existed between Belgrade and DiGirolamo and that he was free to represent other manufacturers. He was supplied with a list of Belgrade's accounts and with samples of its shoes, but was not required to solicit those accounts. Belgrade exercised no control or

"C. For the purposes of this section, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business'."

direction over DiGirolamo's contact with customers or the frequency or manner of any contact. Other than samples, no materials or equipment was supplied by the corporation. Mr. DiGirolamo was paid on a draw against commission basis and was responsible for his own social security and withholding obligations.

The affidavit recites that the corporation exercised no physical control over DiGirolamo's activities, that he was his own master and free to conduct his operations as he desired. He had no authority to bind the corporation to any contract. He was not reimbursed for any expenses except those incurred in attending, at the invitation of the corporation, an annual shoe exhibit in New York.

Belgrade's affidavit continues that DiGirolamo was not required to meet any sales quotas and had no authority to make or accept payments, fix prices or terms. All orders were accepted, filled and shipped in Maine, and all payments were received there. Just as DiGirolamo was permitted to discontinue representing Belgrade at any time, the corporation could terminate his representation. Finally, the corporation stated that it did not own or rent any office space, building, display areas or property of any kind in Pennsylvania.

Also at the direction of the court, DiGirolamo's deposition was taken. The deposition reveals that he represented only Belgrade and had been their representative since 1950. Approximately four times a year, in addition to meeting at the New York show, representatives of the company came to Pittsburgh to discuss with him the accounts and business of Belgrade. He was a member of a group insurance program for which the company paid the premium. DiGirolamo called on twenty outlets for Belgrade in Allegheny County, and he regarded his earning power at $10,000 annually, or a draw against commissions of

$200 per week. He testified that he would have to forward $200,000 in orders at 5% to warrant that draw, but that he never reached that goal. However, he continued to receive $200 every week. DiGirolamo felt that he would not have received his draw if he sold any other line of shoes and that he was not permitted to do anything that would divert his attention from Belgrade. At the termination of his representation, there was no settlement of accounts between him and the company. He operated his own car and deducted all expenses for its operation. He was of the opinion that use of an automobile was required by his activities, although he was never specifically directed to travel in that manner. DiGirolamo did take up the matter of delinquent accounts at the request of Belgrade. On occasion, the company would advise him of a new account through correspondence and would set up appointments subject to his schedule. Changes of territory were made by Belgrade at will.

Ordinarily, the determination of whether a driver of a motor vehicle is a servant or independent contractor is made at the time of consideration of the merits to fix ultimate liability. However, because this case came before the court below on preliminary objections raising a question of jurisdiction, it was necessary, as a matter of law, to determine the relationship between DiGirolamo and Belgrade for the purpose of establishing whether Belgrade was "doing business" in Pennsylvania. This was necessarily based only upon the pleadings, Belgrade's affidavit and DiGirolamo's deposition, a record not unlike that presented in *Rufo v. The Bastian-Blessing Company*, 405 Pa. 12, 173 A. 2d 123 (1961). The court below concluded that at the existing stage of the case, there were sufficient facts upon which to find that the jurisdictional requirements of the statute were satisfied, i.e., that Belgrade was doing business in the Commonwealth through DiGirolamo

and that plaintiffs' cause of action arose out of Belgrade's acts or omissions in Pennsylvania.

After an examination of the record, we are of the opinion that the relationship of DiGirolamo to Belgrade was that of an independent contractor, not that of servant or employee. The cases of *Johnson v. Angretti*, 364 Pa. 602, 73 A. 2d 666 (1950), and *Feller v. New Amsterdam Casualty Co.*, 363 Pa. 483, 70 A. 2d 299 (1950), have enumerated factors to be considered in determining the nature of an agency relationship. However, the existence of all or some of the indicia in a given case is not necessarily controlling; each case must be decided on its own facts. *Stepp v. Renn*, 184 Pa. Superior Ct. 634, 135 A. 2d 794 (1957).

In the instant case, immediate consideration must be given to the fact that Belgrade had no right to control and did not in fact control DiGirolamo's activities, time, movements, means of transportation, and the manner and number of contacts, nor was he required to report on his daily or periodic activities. We are aware that in the *Feller* case, supra, this Court indicated that the right to terminate the relationship at any time "tends strongly to show" a master-servant relationship. Here, Belgrade's affidavit asserted the identical right, although DiGirolamo testified to the contrary. But in *Feller*, the employee worked regular hours, received daily instructions as to where to work, reported each day's activities, and was otherwise subject to strict control by his employer. The termination aspect was material to the *Feller* case, which involved the construction of the terms of a "blanket position bond." We do not deem the termination aspect alone to be persuasive under the circumstances of the relationship between Belgrade and DiGirolamo. Here, as in *Feller*, the manner of compensation, whether commission or wages, is immaterial.

Review of the record satisfies us that DiGirolamo exclusively controlled the manner in which his work was performed and that Belgrade had no right to dictate otherwise. Therefore, Belgrade was represented in Pennsylvania by an independent contractor, and the corporation itself was not doing business in the Commonwealth within the meaning of the statute.

The order dismissing the preliminary objections is reversed, and the action against Belgrade is dismissed for want of jurisdiction over the person.