Yoffee *v.* Golin (et al., Appellant).

Argued November 18, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Jerome H. Gerber,* for appellant.

*Arthur Berman,* with him *Compton, Handler, Berman & Boswell,* for appellees.

Opinion by Mr. Justice Eagen, January 7, 1964:

In this action in equity, the defendant, Student Accident Plans, Inc. (Plans), appeals from an order in the court below dismissing its preliminary objections raising the question of jurisdiction over the person. Service of process was made on appellant, a non-registered foreign corporation, through the Secretary of the Commonwealth in accordance with the provisions of the Act of May 5, 1933, P. L. 364, §1011, as amended, 15 P.S. §2852-1011 (Supp. 1962).

The prime question for decision is whether or not the corporate-appellant engaged in any act or series of acts within the Commonwealth, which constituted "doing business" as defined in the aforesaid statute, which would render it amenable to service of process thereunder.

The plaintiffs complain in this action that the defendant Golin, a former employee, violated a restrictive covenant in his employment contract by misappro-

priating certain trade secrets and making them available to the defendant-appellant.

Plans is a Maryland corporation engaged in the business of selling student accident insurance through a business office located in the City of Baltimore. It is the position of the plaintiffs, that Golin was authorized to and did solicit insurance business on behalf of Plans from his personal office in Camp Hill, Pennsylvania, and that his efforts in this respect were the acts of the appellant and constituted a "doing business" in Pennsylvania as defined by the Act of 1933, supra.

A preliminary injunction was requested below and at the time of the hearing thereon, Golin was interrogated as if on cross-examination. Depositions of John Pepe, president of appellant-corporation, were also made part of the record. From this testimony, we must decide if Plans did do business in Pennsylvania as contemplated by the legislation involved.

It appears that after leaving plaintiffs' employ, Golin visited Plans office in Baltimore and consulted with its president, Pepe, seeking assistance in securing an insurance carrier for contracts he might write. Pepe telephoned the Guaranty Trust Life Insurance Company of Chicago (which was also Plans' insurance carrier) and inquired if it would care to be represented by Golin. Arrangements were made for Golin to write Guaranty's insurance in the states of Virginia, Minnesota, Georgia, West Virginia and Kentucky.

At the above meeting, Pepe delivered to Golin a quantity of Plans' business letterheads bearing its Baltimore address. Subsequently, Golin used these letterheads in writing and soliciting business through insurance brokers in Wisconsin, West Virginia and Kentucky. The letters were mailed in Pennsylvania and directed that all inquiries and answers be mailed to "S. F. Golin, Manager, Student Dep't, P.O. Box 608, Camp Hill, Penna."

The letters stated, inter alia, "We have an exceptionally fine Student Accident Program," and contained the postscript, "[P]lease note the new address and the new affiliation."

Golin, in his testimony, admitted that he had held himself out as manager of the Student Department of Plans. He also stated that if insurance were written, Plans would have issued the policy, and handled and paid the claims through its Baltimore office. However, he testified that he was, in fact, merely a middleman and that his only role was a "market" for insurance, i.e., he would act as the middleman between Plans and any insurance agent or broker in the designated states interested in such insurance. He had no authority to bind Plans. He received no salary and personally paid postage and all other expenses. No applications for insurance were received as a result of the letters and not a single policy was written by Plans as a result thereof.

According to Pepe's testimony, his company never solicited insurance in Pennsylvania, nor has any such insurance been written; also it has never solicited insurance sales in any state other than Maryland.

The instant case is controlled by our recent ruling in *Namie v. DiGirolamo,* 412 Pa. 589, 195 A. 2d 517 (1963). Herein as in *Namie,* the circumstances fail to sustain the conclusion that the relationship of a master-servant, or principal-agent relationship existed. Plans and Golin were separate and independent parties. The former exercised and in fact had no control over the latter's insurance activities. Golin was at most an independent contractor. His acts were his own. Plans itself was not doing business within the Commonwealth within the meaning of the statute. See, *Swavely v. Vandegrift,* 397 Pa. 281, 154 A. 2d 779 (1959); and *Namie v. DiGirolamo,* supra.

It is also urged that appellant waived its right to challenge the jurisdiction of the court by participating in the hearing on the preliminary injunction. We cannot agree.

Before this hearing was scheduled, appellant filed a timely objection to the court's jurisdiction in the form of preliminary objections. At the hearing, appellant's counsel objected to any further proceedings before the preliminary objections were heard and decided. The court overruled the objection and directed that the hearing proceed. To now construe appellant's efforts in restricting preliminary restraints as a "voluntary waiver" which jeopardized its position in the ultimate litigation would be unrealistic and unconscionable: See, *Pellegrini v. Roux Distributing Co., Inc.,* 170 Pa. Superior Ct. 68, 84 A. 2d 222 (1951) ; and, *Wanamaker v. Wanamaker,* 315 Pa. 229, 172 A. 846 (1934).

Order reversed. Costs on appellees.