**CRANE COMPANY, an Illinois corporation, Plaintiff,**

v.

**FEDERAL HYDRONICS, INC., a Minnesota corporation, Defendant.**

**Civ. A. No. 64–1142.**

United States District Court
W. D. Pennsylvania.

March 10, 1965.

Frank L. Seamans and John H. Morgan, Pittsburgh, Pa., for plaintiff.

Clyde A. Armstrong and Edmund S. Ruffin, III, Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

This case is before me on the motion of defendant, Federal Hydronics, Inc., to

dismiss the complaint of plaintiff Crane Company. Plaintiff is an Illinois corporation which does business in Pennsylvania. Defendant is a Minnesota corporation not registered to do business in Pennsylvania. Defendant was served by substituted service on the Secretary of the Commonwealth of Pennsylvania pursuant to Rule 4(e) of the Federal Rules of Civil Procedure and 15 P.S. § 2852–1011, subd. B of the Pennsylvania Business Corporation Law.

Defendant has moved to dismiss this action for lack of jurisdiction and to quash service of the summons and complaint on the grounds that defendant is neither present nor doing business within the jurisdiction of this Court. Therefore, the issue presented to this Court is whether defendant does business in this state as defined by the Pennsylvania Business Corporation Law, 15 P.S. § 2852–1011, subd. C. Both sides have filed affidavits as to the business activities of defendant. Counsel have been heard at oral argument, and the affidavits and briefs have been duly considered.

In the complaint of Crane Company, it is alleged that on September 6, 1962, it entered into a patent licensing agreement with defendant whereby defendant licensed plaintiff to manufacture and sell certain electric hydronic systems under patent rights owned by defendant. However, a copy of the contract is not attached to the complaint. Plaintiff alleges that under the terms of the license agreement defendant had the option to purchase from plaintiff any part or all of defendant's requirements for the systems, and plaintiff was obligated to manufacture systems for defendant with defendant's label affixed thereto. Plaintiff further alleges that defendant issued its purchase order ordering 6,120 systems from plaintiff. Plaintiff seeks damages for defendant's refusal to accept delivery of the systems in the sum of $73,667.37.

The affidavit of R. E. Casner filed by plaintiff indicates that negotiations commenced in 1962 between plaintiff and defendant by way of correspondence and face-to-face bargaining sessions. A negotiating session was held in Johnstown on April 17, 1962, and as a result a mutually agreeable contract was prepared by attorneys for the defendant in Minneapolis, Minnesota, in August of 1962, and was there executed by defendant. Five copies of the contract were sent to plaintiff's office in Johnstown where they were signed by R. E. Casner, and two of the executed copies were returned to defendant.

Article VI of the license agreement provides that Crane, as licensee, must pay Aqua-Lectric (defendant's previous name) royalties of six per cent of the net sales price on each sale of a system or component thereof.

Subsection D of Article VI of the license agreement gives the defendant the right to send its officers or agents to plaintiff's PHAC Group headquarters in Johnstown twice a year in order to inspect Crane's books and records pertaining to the manufacture, sale and distribution of the system and its components.

Article IV of the license agreement requires defendant to maintain an engineering staff which is to furnish all design engineering and know-how including, "the rendering of all necessary technical advice, assistance and consultation" as might be required by Crane for the manufacture and sale of the system. This article indicates that plaintiff may be required to conform to engineering staff instructions received from defendant in New Jersey and contemplates activity on the part of defendant in Pennsylvania.

The affidavit of R. E. Casner indicates that after the license agreement was executed four additional meetings between Crane employees and defendant's agents and officers were held at Johnstown. Each of these meetings was attended by Mr. Herald J. Williams, Jr., president of Aqua-Lectric, Inc. The purpose of most of these meetings was to resolve problems relating to the prices, production, packaging, sale and distribution of the systems or the component parts thereof.

Defendant's position on the instant motion is succinctly stated in its brief and is as follows:

"Other than the said preliminary discussion in Johnstown, Pennsylvania, concerning the proposed patent license agreement and a few discussions in Johnstown subsequent to entering into such an agreement, and pertaining to such subjects as engineering problems, sales and distribution in connection with that agreement, there were no activities by defendant in Pennsylvania. The license agreement itself was drafted in Minnesota and executed by defendant there and forwarded by mail to plaintiff in Johnstown. The purchase order referred to in the complaint was likewise forwarded by defendant to plaintiff in Johnstown. * * * "

"The affidavit made by Raymond H. Bohr, President of defendant, and filed with defendant's Motion for Dismissal, sets forth that defendant is not registered to do business in Pennsylvania; that it has no office or place of business here; that the sales of its products are nationwide pursuant to orders received by defendant in New Jersey; and that it has no employees or telephone listings in Pennsylvania. This affidavit also sets forth that defendant receives orders in New Jersey for its products from some purchasers in Pennsylvania and defendant also recognizes three independent manufacturers' representatives in Pennsylvania who are free to handle other manufacturers' products and who operate solely on a commission basis without any restrictions imposed by defendant."

On the other hand plaintiff says, based on both affidavits and the allegations in the complaint that defendant comes within the recently amended statute in Pennsylvania which only requires minimal activity within this state to become subject to service of process. The statute as last amended in 1963 says:

"For the purposes of determining jurisdictions of courts within this Commonwealth, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business.' "

In examining the decisions of the highest Court of Pennsylvania and of the Court of Appeals on this subject, one needs to be very careful as the statute has been amended twice, and there was a short period in 1959 when it was not even in effect. It is noticed also that in the instant case the issue is whether the defendant by its officers and employees is actually present in this state " * * * for the doing of a series of similar acts * * * or doing a single act * * * for such purpose, with the intention of thereby initiating a series of such acts, * * * ." Plaintiff argues that in the instant case defendant's presence at the initial discussions, and thereafter in order to iron out business problems, amounts to doing a series of similar acts for the purpose of thereby realizing pecuniary benefit. As I understand it also, it argues that a single act, that is, the initiation of a contract in this state, was for the purpose and intention of initiating a series of similar acts. When one examines the business transaction entered into between these parties, it is to be emphasized that the agency situation is not present in this case as in many of the cases cited by defendant. Notably see Swavely v. Vandergrift, 19 Pa.Dist. & Co.R.2d 153 (Bucks 1958), affirmed 397 Pa. 281, 154 A.2d 779, (1959); Namie v. Di Girolamo, 412 Pa. 589, 195 A.2d 517, (1963); Yoffee v. Golin, 413 Pa. 154, 196 A.2d 317 (1964), and Mays v. Mansaver Industries, Inc., 196 F.Supp. 467, (E.D.Pa.1961).

Many of the older decisions dealing with the question of what constitutes "doing business" have no significance in presently considering this troublesome question. For example, Florio v. Powder Power Tool Corp., 248 F.2d 367, (3rd Cir. 1957) which was based in part on the substantive law of Pennsylvania was disapproved in Rufo v. The Bastian-Blessing Co., 405 Pa. 12, 173 A.2d 123, (1961). Subsequent to these cases the Pennsylvania Statute was amended in 1963 so that the requirement that the act or omission must have occurred in Pennsylvania is no longer necessary as it was at the time Rufo was decided. However, Florio is still authority for the proposition that under the federal venue statute, 28 U.S.C.A. § 1391 (c), state law is to be applied to determine whether a corporation is doing business in Pennsylvania. In this respect the Supreme Court has decided that as far as the Due Process Clause of the Fourteenth Amendment is concerned a foreign corporation is subject to a judgment *in personam* if there are certain minimum contacts within a state so that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

It is obvious that defendant negotiated the licensing agreement in order to realize a pecuniary benefit. One pecuniary benefit which defendant sought by entering the Commonwealth was to take the form of a payment of a six per cent royalty based on the sale of systems and components manufactured by plaintiff pursuant to the license agreement. In order to insure that the pecuniary benefit which it sought would be properly forthcoming, defendant reserved the further right to enter the Commonwealth twice a year to inspect the plaintiff's books and records relating to the manufacture, sale and distribution of the systems and components. Defendant not only entered the Commonwealth a total of five times to negotiate and carry out a profitable contract, but contemplated further entries on a regular basis to insure that it was receiving the pecuniary benefit for which it had originally entered Pennsylvania.

The conclusion of the Court is that under the Pennsylvania Statute defendant is doing business within this state and within this district; and there being diversity jurisdiction under the pleadings, and the venue statute being satisfied, the motion to dismiss is denied.