## Commonwealth v. Haines

*Douglas R. Blazey,* Special Assistant Attorney General, for Commonwealth.

*Michael P. Bianchini,* for defendant.

ATKINS, P. J., January 17, 1972.—The Commonwealth filed a complaint in equity May 7, 1971, seeking a preliminary injunction restraining defendants, Homer S. Haines and William M. Haines, from violating the provisions of the Pennsylvania Solid Waste Management Act of July 31, 1968, (No. 241) 35 PS §6001, et seq., and the Clean Streams Law of June 22, 1937, P. L. 1987, as amended, 35 PS §691.1, et seq.

It is alleged that Homer S. Haines operates a landfill for disposing of solid wastes without a permit, and also that he is operating in violation of the regulations of the Department of Environmental Resources, and that William M. Haines as owner of the land on which

the enterprise is conducted, permits such improper operation.

The court granted a rule on defendants to show cause why a preliminary injunction should not issue and fixed June 3, 1971, as the time for hearing. On May 25, 1971, William M. Haines filed an answer to the complaint. On June 1, 1971, preliminary objections to the complaint were filed by Homer S. Haines, and on June 3, 1971, preliminary objections were filed by William M. Haines notwithstanding the fact that he had previously filed an answer. On June 3, 1971, counsel for the parties indicated that they had reached an understanding that would make a hearing on the rule to show cause why a preliminary injunction should not issue unnecessary and that a decree would be submitted to the court for its approval. Such a decree, called "Interim Decree," was submitted on June 7, 1971, approved by the court and filed of record that same day. This decree referred only to defendant Homer S. Haines with no reference to defendant William M. Haines, and there is no indication that either William M. Haines or his counsel agreed to be bound by this decree. In fact, all subsequent proceedings hereinafter mentioned, were participated in only by the Commonwealth and defendant, Homer S. Haines. At least so far as the record shows, there was no participation or agreement by William M. Haines.

On June 17, 1971, the Commonwealth filed a petition to enforce the interim decree. The prayer of this petition was that the court, "order Homer S. Haines to cease depositing solid wastes at the site, pursuant to Section 6(a) of the Interim Decree." A rule was granted on Homer S. Haines to show cause why the prayer of this petition should not be granted and fixed a hearing thereon for July 12, 1971. On July 12, 1971, instead of a hearing, there was another conference between

counsel for the Commonwealth and Homer S. Haines which resulted in a stipulation wherein it was agreed that, "The following provisions of the Interim Decree shall be construed to require the following for purposes of determining defendant's compliance with the Decree." Then follows nearly three pages of typing in which are set forth in substantial detail how Homer S. Haines shall operate his land-fill to satisfy the Commonwealth.

On October 21, 1971, the Commonwealth filed another petition alleging further violation of the interim decree and praying for a rule on Homer S. Haines to show cause, "why respondent should not be required to cease disposing solid wastes at the site pursuant to paragraph 6 of the interim decree, and why a hearing should not be set on Plaintiff's Motion for a preliminary injunction." The rule was granted as requested and a hearing set for November 5, 1971. On that date, a hearing was held when both the Commonwealth and Homer S. Haines presented evidence. At the conclusion of the hearing, defendant called attention to the fact that his preliminary objections were still pending. Also, it was suggested that he would like to submit a brief on the issues raised at the hearing. The court then suggested both parties brief both the issues raised at the hearing and also those raised by the preliminary objections. Such briefs were filed.

We shall direct our attention first to the preliminary objections filed by Homer S. Haines. Since William N. Haines has not been participating in any of the proceedings since June 1971, his preliminary objections will not now be considered.

The objections of Homer S. Haines are in three parts:

1. An objection to the validity of the service on the complaint on him.

2. A demurrer alleging that plaintiff fails to state a cause of action in that the rules and regulations are not drafted in compliance with the Act of Assembly and are, therefore, illegal and unconstitutional; and

3. A motion for a more specific complaint in that the complaint fails to specify how defendant violated the regulations and also how the failure to obtain a permit constitutes a clear and constant danger to the citizens of the Commonwealth, and also how the alleged rules and violation constitute a clear and present danger to the health, safety and welfare to the citizens of the Commonwealth.

We do not need to demonstrate the fact that there was no valid service of the complaint on defendant, for the Commonwealth readily agrees in the brief that there was no valid service. However, the question is before the court whether defendant by his conduct has submitted to the jurisdiction of the court. The Commonwealth argues that defendant has waived his right to question the validity of the service of the complaint and, consequently, the lack of the jurisdiction of the court over his person. To support this disposition, the court's attention is directed to defendant's participation in the preparation and the filing of the interim decree and the stipulation of July 12, 1971, as well as his participation in the hearing on November 5, 1971.

Defendant argues that he reserved his right to object to jurisdiction over his person by the provisions of paragraph 8 of the interim decree which provided:

"No new action shall be commenced by the Commonwealth against Homer S. Haines, so long as Homer S. Haines shall comply with the terms of this interim decree and no new violations occur, and all proceedings in this matter shall stay until this interim decree expires pursuant to its terms." He also points to paragraph C of the stipulation of paragraph 12 of

July 12, 1971. "The parties do not admit or deny any violation of the existing interim decree by virtue of this stipulation and intend that the interim decree and all their respective rights shall remain in full force and effect."

We think that paragraph D of the stipulation also bears on the question of defendant's status before the court. There, it is provided: "The hearing scheduled for July 12, 1971, on the Commonwealth's petition to enforce the interim decree, has been continued generally by agreement of the parties, but may be moved to hearing at any time by either party." A general appearance may arise by implication from defendant's seeking, taking, or agreeing to take some step or proceeding in the cause beneficial to himself or detrimental to plaintiff, other than one to contest jurisdiction over his person only, or from some act done with the intention of appearing and submitting to the court's jurisdiction: 5 Am. Jur. 2nd, Appearance, sec. 14. In section 16 of the same work, it is said:

"If a party deals with the merits, or does any act which recognizes the case as in court, he submits to the jurisdiction of the court. This means any act that recognizes the case as pending in court, with jurisdiction of the subject matter and of the parties, such as the seeking of some affirmative relief at the hands of the court, the asking of a favorable decision on some matter of a substantial character, or an endeavor to secure a continuance or postponement."

Here defendant did several of these things. He agreed to the entry of a decree that imposed obligations on him, while at the same time permitting him to operate and agreeing to cancel a hearing that may have resulted in an order subsequently restraining his continued operation. He agreed to the second stipulation by which a second hearing was cancelled and

which provided "that the matter may be moved to hearing at any time by either party."

This situation is different from that in Yoffee v. Golin et al., 413 Pa. 154, where, in an equity action in which a preliminary injunction was sought, defendant filed preliminary objection to jurisdiction over the person of defendant, and when the case came on for hearing on the issue of the granting of the preliminary injunction, defendant objected to proceeding because the jurisdictional question was pending. The court overruled the objection and required the hearing to proceed without acting on the jurisdictional question. The participation in the hearing under those circumstances was held not .to be a voluntary waiver of the objections to the jurisdiction of the court over defendant's person. Here, everything defendant did was voluntary and without objection.

We conclude that Homer S. Haines by his conduct in this proceeding has submitted to the jurisdiction of the court and has waived the defective service of the complaint.

Defendant, Homer S. Haines, demurs to the complaint on the grounds that the rules and regulations promulgated by the department are not drafted in compliance with the act of assembly and are, therefore, illegal and unconstitutional. He does not allege in his preliminary objection specifically how the rules and regulations failed to comply with the act of assembly. However, in his brief, defendant argues that the act does not set up sufficient standards to provide such guides in the drafting of regulations that would prevent an unconstitutional delegation of legislative power to the department. We shall pass on this argument notwithstanding that it is not deliberately raised by the preliminary objections. We do not agree with the argument.

The authority granted to the department to "Adopt such rules, regulations, standards and procedures as shall be necessary to conserve the air, water and land resources of the Commonwealth, protect the public health, prevent public nuisances, and enable it to carry out the purposes and provisions of this act": Act of July 31, 1968, (No. 241), sec. 6(3), 35 PS §6006(3). The Supreme Court of Pennsylvania has carefully considered what constitutes sufficient guides that must be furnished regulatory bodies vested to make rules and regulations so that there is not an unconstitutional delegation of power by the legislature to the regulatory body.

This subject is analyzed at length in Chartiers Valley Jt. Schs. v. Allegheny Co. Bd., 418 Pa. 520. It would serve no purpose here to quote at length from that opinion. Suffice it to say, that the guides furnished the department in the Pennsylvania Solid Waste Management Act are fully as specific as those considered in Chartiers. See also DePaul et al. v. Kauffman, 441 Pa. 386, which reaffirms Chartiers.

The other objection is over a motion for a more specific statement. The first point in this regard is that the complaint fails to state how the Solid Waste Management Act has been violated. It is difficult to follow defendant's reasoning in this regard, for the complaint clearly alleges the operation of a landfill as a solid waste processing and disposal facility without first having obtained a permit as required by the Solid Waste Management Act. Further, it alleges 14 specific acts alleged to be in violation of various regulations promulgated pursuant to the regulations granted it by the act.

The second point in this objection is that the complaint fails to state how the alleged derelictions of defendant constitute a clear and present danger to the

health, safety and welfare to the citizens of Pennsylvania. Such an allegation might have merit were we here dealing with a preliminary injunction, but that is not now the case. The parties have agreed to the entry of an interim decree and subsequent stipulation clarifying certain of its provisions. They have by this action by-passed the issue of a preliminary injunction and have removed it as an issue.

We turn now to the question presented by the last petition presented by the Commonwealth; namely, the petition filed asking the court to enforce the interim decree and stipulation. Briefly stated it is alleged:

1. The total surface of the abandoned fill area was not covered by at least six inches of clean suitable cover material as required by paragraph B(1) of the stipulation.

2. The slopes of abandoned fill area had not been graded in the manner required in paragraph B(2)(a).

3. A final cover of two feet of clean, compacted, suitable earth cover was not applied over the slopes as required by paragraph B(2)(b) of the stipulation.

4. The final slopes were not revegetated as required in paragraph B(2)(c) of the stipulation, and

5. A vector control program was not put into practice as required by paragraph B(2)(d) of the stipulation.

Testimony was taken from witnesses who had visited the site of the landfill, observed that none of the above things were done up to the time of the hearing which was held considerably more than two months after the order of the interim decree of June 7, 1971. The two-month period is significant because the interim decree and the stipulation provided that these acts were to be completed within a two-month period from the date thereof.

Mr. Haines testified that he had spread some dirt over a portion of the area referred to in the interim de-

cree. He did not contend that he had performed these obligations, but rather sought to excuse his nonperformance. This he excused because bulldozers were not available to him for removing the dirt necessary, due to breakdowns in his equipment, and also due to the necessity of his equipment for other purposes. He also said that he found it too expensive to rent the necessary equipment. There was actually no testimony that rental equipment was unavailable, nor was there evidence as to the actual cost of such rental from which any determination might be made that the cost was so prohibitive as to make it economically unfeasible. He sought to excuse the failure to initiate a vector control program on two grounds: First, that there were no rodents or insects present, and second, that he couldn't obtain the recommended rat bait.

It would seem the best way to control vectors is to prevent their initial appearance rather than to resort to eradication once they are on the scene. We are not impressed with his efforts to secure bait of which there are more than one effective type, and by his testimony he seemed to clearly indicate that his efforts were limited to attempts to secure a particular type of bait.

We conclude that Homer S. Haines has violated the terms of the interim decree as construed by the stipulation, both of which he agreed on June 7, 1971, and July 12, 1971, respectively. He agreed to the entry of interim decree which provided that his "right to operate the 'landfill' hereunder terminates upon the occurrence of any of the following:

"a. A breach by Homer S. Haines of any of the provisions of this Interim Decree . . ."

He has violated five parts of the stipulations of July 12, 1971, in which it was agreed that all five parts were required for the purpose of determining defendant's compliance with interim decree.

We accordingly enter this

## ORDER

And now, January 17, 1972, it is ordered, adjudged and decreed that Homer S. Haines forthwith cease and desist from continuing the landfill operation on the land of William M. Haines, in Fairview Township, York County, Pa., until a permit be obtained for such operation pursuant to the requirements of the Pennsylvania Solid Waste Management Act of July 31, 1968, (No. 241), as amended, 35 PS 6001, et seq., and the regulations adopted pursuant thereto.