Cecere v. Ohringer Home Furniture Company
(et al., Appellant).

Argued April 11, 1966. Before ERVIN, P. J., WRIGHT, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (WATKINS, J., absent).

*Orrin G. Hatch,* with him *Pringle, Bredin, Thomson, Rhodes & Grigsby,* for appellant.

*John D. Stedeford,* for appellee.

OPINION BY HOFFMAN, J., June 17, 1966:

In October of 1962, the original defendant herein, Ohringer Home Furniture Company (Ohringer), delivered a packed and crated lamp to the home of plaintiffs, James and Theresa Cecere. On April 24, 1964, plaintiffs filed suit in trespass against Ohringer alleging that the packing used to protect the lamp during shipment was infested with maggots, moths and worms

which damaged their property and made them ill.

Ohringer filed an answer denying plaintiffs' allegation and alleging that the Florence Art Company (Florence), an Illinois corporation, was responsible for any damages sustained by plaintiffs. Ohringer then attempted to join Florence as an additional defendant through substituted service on the Secretary of the Commonwealth in accordance with the provisions of §1011B of the Business Corporation Law of May 5, 1933, P. L. 364, as amended, 15 P.S. §2852-1011B. Florence filed preliminary objections to the complaint challenging the jurisdiction of the court over its person on the ground that it was not "doing business" in Pennsylvania. After a hearing the court dismissed Florence's preliminary objections and held that Florence was amenable to suit in Pennsylvania and subject to the jurisdiction of the Pennsylvania courts.

The sole issue in this case is whether Florence was "doing business" in Pennsylvania. The pertinent provisions of §1011B of the Business Corporation Law provide:

"B. *Any foreign business corporation which shall have done any business in this Commonwealth,* without procuring a certificate of authority to do so from the Department of State, shall be conclusively presumed to have designated the Secretary of the Commonwealth as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising within this Commonwealth." (Emphasis supplied)

The definition of "doing business" is given in §1011C of the above act:

"C. For the purposes of determining jurisdictions of courts within this Commonwealth, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby

realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business.' "

The lower court made the following findings of fact:

"This record reveals that Florence Art Company is a registered corporation of the State of Illinois and was not registered to do business in Pennsylvania. It maintains no office and owns no real or personal property in Pennsylvania. It had a manufacturer or sales representative in Pennsylvania, Mr. Milton B. Hartz, who had solicited for Florence Art for some two to three years prior to the date that the cause of action arose. Mr. Hartz was paid on a commission basis; he represented four other companies besides Florence Art; there was no written agreement between Florence Art and Mr. Hartz; he was not required to make any reports; he operated from his home. Florence Art exercised no control over his activities and method of selling Florence Art products. All sales were subject to the approval of Florence Art and shipment was made directly from it to the purchaser; all payments were made from the purchaser directly to Florence Art; Mr. Hartz had a definite territory to work; namely, Pennsylvania. At the time, Mr. Hartz became Florence Art's sales representative, it had only three customers in this area. Through the efforts made by him in promoting Florence Art products as its representative, the number of its sales in Pennsylvania greatly increased. Mr. Hartz called on Ohringer five or six times a year to promote Florence Art's products."

In addition, the deposition of Mr. Hartz relative to his activities on behalf of Florence reflect:

(1) Hartz had no draw on his commissions.

(2) No withholding tax was taken from his commissions.

(3) He paid his own social security and health insurance.

(4) He owned his own car; it was registered in his own name, and he paid all expenses including gas, oil and insurance.

(5) If Florence did not accept an order, his commission would not be paid.

(6) He did not collect accounts.

(7) He advertised by using a personal card which did not bear the names of any of the companies which he represented.

(8) Ohringer had purchased other products from Florence prior to the time that Mr. Hartz had obtained the line. Hartz had also sold other products to Ohringer prior to obtaining Florence's line.

The lower court held that Florence was "doing business" in Pennsylvania, since (1) it was soliciting business through Hartz on a regular and systematic basis in Pennsylvania, and (2) its sales had greatly increased through Hartz's efforts.

On appeal, Florence relies on *Namie v. DiGirolamo*, 412 Pa. 589, 195 A. 2d 517 (1963). This case was analyzed by the Supreme Court in *Miller v. Kiamesha-Concord, Inc.*, 420 Pa. 604, 612, 218 A. 2d 309, 313 (1966): "DiGirolamo was a manufacturer's representative for Belgrade Shoes. He resided in Pittsburgh and advertised in the classified pages of the Pittsburgh Telephone Directory as 'Belgrade Shoe Co., Moxees Division, Representative—Henry T. DiGirolamo.' Belgrade exercised no control over the methods employed by DiGirolamo in contacting the various customers, and the only items Belgrade supplied were various samples of shoes. DiGirolamo was paid on a draw against commission and was responsible for his own Federal Social Security taxes and other various withholding obligations. DiGirolamo had no authority to bind the corporation to any contract nor was he reimbursed for

any expenses except those incurred while attending, at the invitation of the corporation, an annual convention in New York. Belgrade stated that it did not own or rent any office space in Pennsylvania and that either party could discontinue its association at any time. It should be noted that DiGirolamo was a member of a company group insurance plan on which the company paid the premium. In that case, we held: '. . . that the relationship of DiGirolamo to Belgrade was that of an independent contractor, not that of servant or employee.' " The Court held, therefore, that Belgrade was not doing business in Pennsylvania.

The foreign corporation's representative in *Kiamesha-Concord,* supra, was similarly found to be an independent contractor. In that case a representative for a New York hotel solicited business for the hotel in Pennsylvania. The hotel had no property in Pennsylvania but supplied the representative with envelopes, advertising literature, and reservation requests on which both New York and Philadelphia addresses were printed. Reservations could be confirmed only by the hotel in New York. The representative was paid on a commission basis and had a drawing account against her commissions. No social security or income tax payments were withheld from her commissions which were paid on approximately $200,000 worth of business each year. In addition she received an "over-ride" on commissions paid to other travel agencies in the Philadelphia area. The Supreme Court concluded that the hotel was not "doing business" in Pennsylvania, because it did not control the activities of the representative who was an independent contractor.

There is greater reason in the instant case for finding that Hartz was an independent contractor. Florence exercised no control over his activities. He had no power to accept orders. There was no written agreement between Hartz and Florence. There is no

indication that Hartz received any supplies from Florence. He had no draw on his commission. Finally, he represented not one but five independent companies, and his advertising did not reflect his association with Florence. A careful review of the record satisfies us, therefore, that, in light of the criteria relied upon by our Supreme Court, Florence was represented in this Commonwealth by an independent contractor.

Plaintiffs, however, do not rely solely on the activities of Hartz. They contend further that under §1011C of the Business Corporation Law, the proper test of doing business is whether the foreign corporation's activities were done for the purpose of thereby obtaining pecuniary benefit. They conclude, ". . . that the sale in Pennsylvania of many lamps and other furniture over a long period of time and the increase in the volume of these sales is clearly activity done for the purpose of thereby realizing pecuniary benefit," and, therefore, Florence was "doing business" in Pennsylvania.

However much we may agree with plaintiff's position, we are constrained to find under the decisions of our Supreme Court that these activities would not constitute "doing business." The requirement under §1011C for doing business is, in part, "the *entry* of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing a pecuniary benefit. . . ." The concept of "entry," however, has been severely limited.

In *Swavely v. Vandegrift*, 397 Pa. 281, 154 A. 2d 779 (1959), the Supreme Court of Pennsylvania affirmed the order of the court below, reported at 19 Pa. D. & C. 2d 153 (1958). In *Swavely*, Calcinator Corporation, a Michigan corporation, marketed its products through distributors in Pennsylvania who were separate and independent from the corporation and were engaged in the distribution of the products of other

companies. In addition, Calcinator had manufacturer's representatives in Pennsylvania who recommended distributors to Calcinator. Calcinator's distributors had purchased approximately four percent of the manufacturer's gross sales of $835,000 in its fiscal year ending in 1956. A Pennsylvania resident brought an action in trespass against a retailer for faulty installation of an incinerator which caused a fire. The retailer attempted to join Calcinator and the distributor for negligence either in the failure to provide adequate installation instructions or in the manufacture of the product.

The Supreme Court held that Calcinator was not doing business in Pennsylvania under §1011C of the Business Corporation Law.[1] The opinion of the court below, which the Supreme Court deemed an able analysis of the law, stated, "In the instant case, however,

---

[1] It should be noted that §1011C was enacted in 1951 and was repealed in 1957. The *Swavely* case, supra, was decided under §1011C, since the events there occurred prior to its repeal. The section was re-enacted again in 1959. It was amended in 1963 by the Act of August 13, 1963, P. L. 703. The amendment deleted the introductory words, "For the purposes of this section," and substituted in their place, the words, "For the purposes of determining jurisdictions of courts within this Commonwealth." In addition the 1963 amendment eliminated the statement in §1011B which applied it only ". . . in any action arising out of acts or omissions of such corporation within this Commonwealth." Section B now applies ". . . in any action arising within this Commonwealth." The apparent intent of the 1963 amendments, although it has never been decided by our Supreme Court, was to permit the availability of these sections irrespective of the situs of the acts or omissions giving rise to the cause of action. See *Miller v. Kiamesha-Concord, Inc.*, supra, p. 610; *Inter-State Milk Producers' Cooperative v. Metropolitan Cooperative Milk Producers Bargaining Agency, Inc.*, 236 F. Supp. 558 (M.D. Pa. 1964). No change has been made, however in that portion of subsection C which defines "doing business" which language remains unchanged from that contained in the original 1951 act.

there is no evidence whatsoever that Calcinator Corporation ever had 'entered' this Commonwealth or done any series of similar acts, or even a single act, through its own officers or employes, whether authorized to bind it or not and whether for its pecuniary benefit or not, until Hebert's appointment as the substituted manufacturer's representative in August 1956, which was long after the time and occasion of the operative facts constituting the alleged cause of action arising in or prior to January of 1955. Neither S. H. French Distributors, Inc. nor Raymond Pask, was an agent or employe of Calcinator Corporation; both were separate and independent parties whose activities in connection with the marketing of the incinerators were not subject to such restrictions as justifiably to permit the conclusion that Calcinator Corporation possessed the degree of control requisite to constitute a master servant or principal agent relationship over either. *Obviously, an impersonal corporate entity organized and located in another jurisdiction can be said, in the words of the statute, to have 'entered' the State of Pennsylvania only if its agents or property have been physically present therein on the relevant occasion.*" (Emphasis supplied). The decision in *Swavely* was cited approvingly in *Rufo v. The Bastian-Blessing Co.*, 405 Pa. 12, 173 A. 2d 123 (1961), and in *Yoffee v. Golin*, 413 Pa. 154, 196 A. 2d 317 (1964).[2]

It thus appears that the ". . . legislature, by its enactment of §§1011B and 1011C, intended to extend and

---

[2] See also *Namie v. DiGirolamo*, supra, in which the Supreme Court, in deciding whether the foreign corporation was doing business in Pennsylvania, examined only the relationship between the corporation and its representative and ignored the fact that the corporation sold its products to twenty outlets in Allegheny County. Cf. *Henderson v. New York Pressing and Machinery Corporation*, 241 F. Supp. 425 (W.D. Pa. 1965), and *Triangle Publications, Inc. v. Standard Plastics Products, Inc.*, 241 F. Supp. 611 (E.D. Pa. 1965).

enlarge the amenability to suit of a foreign corporation carrying on activities within the Commonwealth and to abolish the 'solicitation plus' doctrine. . . . It, however, by no means follows that the legislature intended to make foreign corporations suable without limitation." *Rufo v. The Bastian-Blessing Co.,* supra, p. 21. Thus, while the "solicitation plus" rule[3] has been extended, the Supreme Court in *Swavely* severely limited the concept of "doing business" by concluding that the distribution of products in Pennsylvania by the foreign corporation was not sufficient basis for jurisdiction. It held that the test, in part, includes, the "entry" into the Commonwealth by the foreign corporation by the physical presence of agents or property. Since Hartz was not an agent but an independent contractor, and since Florence had no property in Pennsylvania, Florence was not doing business under that test.

This approach seems unduly harsh in an era of instant communication, rapid transportation and modern marketing methods which frequently involve distribution of products on a nationwide scale without regard to state boundaries. As Mr. Justice BLACK recognized in *McGee v. International Life Insurance Co.,* 355 U.S. 220, 222-23 (1957), "Today many commercial transactions touch two or more States and may involve parties separated by a full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." To allow a company to send its products into interstate commerce

---

[3] See *Lutz v. Foster & Kester Co., Inc.,* 367 Pa. 125, 79 A. 2d 222 (1951).

and yet remain subject to suit only within its own state borders appears patently unfair.[4]

First, a manufacturer should be subject to jurisdiction when his product gives rise to a cause of action within a foreign jurisdiction, even though it had no other contact with the state. The foreign corporation's economic purpose and objective is to develop a market for its product in the foreign jurisdiction. It avails itself of the privilege of conducting activities within the state. It knows that its manner of commerce will have consequences in the foreign state. There is no unfairness, therefore, in requiring that it defend its product in a state in which it has sought pecuniary gain.

Conversely, a requirement that a plaintiff transport himself and his witnesses to a foreign state to bring suit against a foreign corporation may render a very great hardship and make suit impossible. Moreover, it might necessitate the institution of multiple litigation in several states against numerous companies which are potentially liable.

Finally, the forum state has a substantial interest in taking jurisdiction over a non-domiciliary which is responsible for the shipment into the state of a defective or negligently manufactured product. This is especially true when the product has harmed one of its citizens. Furthermore, the state has a decided interest in assuring that its citizens are not denied damages

---

[4] Cf. *Chovan v. E. I. Du Pont de Nemours & Company*, 217 F. Supp. 808 (E.D. Mich. 1963); *Singer v. Walker*, 21 App. Div. 2d 285, 250 N.Y.S. 2d 216 (1964); *Sheridan v. Cadet Chemical Corporation*, 25 Conn. Sup. 17, 195 A. 2d 766 (1963); *Feathers v. Mc-Lucas*, 21 App. Div. 2d 558, 251 N.Y.S. 2d 548 (3d Dep't 1964); *Atkins v. Jones & Laughlin Steel Corp.*, 258 Minn. 571, 104 N.W. 2d 888 (1960); *Nixon v. Cohn*, 62 Wash. 2d 987, 385 P. 2d 305 (1963); *Gray v. American Radiator & Standard Sanitary Corporation*, 22 Ill. 2d 432, 176 N.E. 2d 761 (1961); 25 A.L.R. 2d 1193 (1951).

because of the inconvenience or expense of bringing suit in a distant jurisdiction.

In *Wilk v. Ensign-Bickford Co.*, 421 Pa. 161, 218 A. 2d 778 (1966), the Supreme Court held that a foreign corporation which places a defective instrumentality into the stream of commerce causing an injury in Pennsylvania is not insulated from answering in our courts when assets are available for attachment here. A foreign corporation should be similarly prepared, however, to answer in our courts for injuries caused even if its assets are not by chance located here.

This suggestion is consistent with the approach enunciated in *Griffith v. United Air Lines*, 416 Pa. 1, 203 A. 2d 796 (1964). The Supreme Court there held that in conflict of laws we are no longer to be bound by rigid, formulaic principles which bear no logical relationship to the action sued upon. Rather, the rule must be a flexible one which permits analysis of the policies and interests underlying the particular issue before the court.

Similarly, our Commonwealth's right to assert jurisdiction over a foreign corporation should not depend on whether the corporation's representative in the state was technically an agent or an independent contractor. A more fruitful and proper determination of jurisdiction might include a consideration of the parties relative access to proof and witnesses, the relative hardship to the parties, the foreseeability of consequences in a foreign state, the nature of the injury, and the nature of the corporation's business and activities. Certainly, a flexible standard should be adopted which will test the reasonableness of subjecting a foreign corporation to jurisdiction in the forum state.[5]

---

[5] In the landmark case of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the Supreme Court of the United States stated: "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within

150 

In the absence of any such direction from the Supreme Court, however, we conclude that neither Hartz's activities in Pennsylvania nor the sale by Florence of many items in Pennsylvania constituted "doing business" within the meaning of §1011B and §1011C of the Business Corporation Law.

The order dismissing the preliminary objections is reversed, and the action against Florence is dismissed for want of jurisdiction over the person.

WRIGHT, J., concurs in the result.

---

the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice. . . .'" (p. 316)

"Whether due process is satisfied must depend . . . upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." (p. 319)

Many excellent articles have been written on this subject. See, e.g., Tortious Act as a Basis for Jurisdiction in Products Liability Cases, 33 Fordham L. Rev. 671-705 (1965) ; Note: In Personam Jurisdiction over Nonresident Manufacturers in Product Liability Actions, 63 Mich. L. Rev. 1028-1044 (1965).