**Harold F. MEENCH, Jr.**
v.
**The RAYMOND CORP.**
**Civ. A. No. 39364.**

United States District Court
E. D. Pennsylvania.
April 19, 1968.

Albert S. Fein, Philadelphia, Pa., for plaintiff.

Paul Auerbach, Philadelphia, Pa., for defendant.

## OPINION

MASTERSON, District Judge.

Plaintiff's complaint in this action charges the defendant, hereinafter referred to as Raymond, with negligent manufacture and design of a fork-lift truck. The accident resulting from the alleged negligence occurred on July 28, 1964, in Pennsylvania, while the plaintiff was operating the truck. The subject-matter jurisdiction of this Court has been properly invoked pursuant to Title 28 U.S.C.A. § 1332. The federal venue requirements also have been complied with in accordance with Title 28 U.S.C.A. § 1391(a).

The defendant moves for summary judgment on the ground that service of process was improper because this court lacks personal jurisdiction over the defendant. It is proper to consider such a motion, when based upon an allegation of a lack of personal jurisdiction, as a motion to dismiss. Cf. Navios Corp. v. National Maritime Union of America, 236 F.Supp. 657, 659 (E.D.Pa., 1964); also, see generally, Moore, Federal Practice, Volume 6, ¶ 56.03, pp. 2054, 2055. Plaintiff contends that this Court has personal jurisdiction over Raymond either on the basis of the latter's own entry into Pennsylvania and/or on the basis of its presence here through the person of its alleged agent, F. J. Schindler Co., hereinafter referred to as Schindler, which has its principal place of business in Philadelphia. For reasons discussed below, this Court has concluded that it does not have personal jurisdiction over the defendant. The Court has decided, however, that it will not unconditionally dismiss the action but rather will withhold dismissal for ten days to permit the plaintiff to file a motion to transfer pursuant to Title 28 U.S.C.A. § 1404(a).

Since this is a diversity action the defendant's amenability to suit here is determined in accordance with the law of Pennsylvania. See, Rachelson v. E. I. duPont deNemours and Co., 257 F. Supp. 257, 258 (E.D.Pa., 1966); Arrowsmith v. United Press International, 320 F.2d 219, 221–224, 6 A.L.R.3d 1072 (C.A. 2, 1963); and, generally Moore, Federal Practice, Volume 2, ¶ 4.25(7), pp. 1176–1183, and p. 33 in Supplement. The law relevant to disposition of the case is Pennsylvania Business Corporation Law, Pa.Stat.Ann. Title 15 § 2852–1011, sub-

divisions B & C, 15 P.S. § 2011.[1] As authorized by Rule 4(d) (7) of the Federal Rules of Civil Procedure, the plaintiff served the defendant-corporation pursuant to this statute by serving his complaint upon the Secretary of the Commonwealth and sending a copy of the complaint to the premises of the F. J. Schindler Co. The issue to be decided now is thus the narrow one of whether the defendant's activities in Pennsylvania were such as to satisfy Pennsylvania's statutory standard of "doing business".[2]

At the hearing on defendant's motion counsel argued their respective contentions by reference to three affidavits and two oral depositions.[3] The following relevant facts were adduced from this evidence:

(1) Raymond is incorporated in New York. See, Affidavit, Lamb, p. 1;

(2) Raymond is neither registered to do business in Pennsylvania nor does it have any offices or plants here. See, Affidavit, Lamb, p. 1;

(3) Raymond sells products in Pennsylvania, and in the rest of the United States. See, Deposition, Lamb, p. 7;

(4) Raymond does not have salesmen who either make contracts with dealers or sell directly to customers. See, Deposition, Lamb, p. 17.

(5) Raymond advertises in nationally-circulated trade journals. See, Deposition, Lamb, p. 20;

(6) Raymond sends all its dealers, including Schindler, catalogs describing its products. See, Deposition Lamb, p. 17, and Deposition, Schindler, pp. 8, 12;

(7) Raymond has a school at their plant in Greene, New York, to which they invite their dealers for the purpose of instructing them in the maintenance and use of their products. The school lasts only five days and ordinarily the dealers' representative will attend only once. Mr. Schindler did attend this school. See, Deposition, Schindler, p. 8, and Deposition, Lamb, pp. 15, 16;

(8) Raymond has a contract with F. J. Schindler Co. which establishes a protected dealership arrangement evidently authorizing Schindler to be the exclusive dealer of Raymond products in the Greater Philadelphia area. See, Deposition, Schindler, p. 4;

(9) Raymond itself does not directly sell to customers, but if it receives any inquiries about its products it forwards them to the local dealer such as Schindler. See, Deposition, Lamb, p. 11;

(10) Schindler represents two major lines of fork-lift truck manufacturers besides Raymond, and various other small

1. This statute reads in pertinent part: "B. Any foreign business corporation which shall have done any business in this Commonwealth, without procuring a certificate of authority to do so * * * shall be conclusively presumed to have designated the Secretary of the Commonwealth as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising within this Commonwealth. * * * C. For the purposes of determining jurisdictions of courts within this Commonwealth, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business' ".

2. Prior to 1963 there was a second jurisdictional requirement which was often a matter of controversy in similar cases. This was that the action be one " * * * arising out of acts or omissions of such corporation within this Commonwealth." This provision was deleted in 1963 prior to the time of this accident, and therefore, is of no consequence here. Apparently one purpose of this deletion was to liberalize the jurisdictional requirements in Pennsylvania. See, Cecere v. Ohringer Home Furniture Co., 208 Pa. Super. 138, 145, f. n. 1, 220 A.2d 350 (1966).

3. These were: the oral deposition of Fred J. Schindler, President of the alleged agent of the defendant, F. J. Schindler Co.; the oral deposition of William H. Lamb, Treasurer of Raymond; an affidavit of Schindler; an affidavit of Lamb; and, an affidavit of Albert S. Fein, Counsel for the plaintiff.

manufacturers of similar handling equipment. See, Deposition, Schindler, pp. 2, 3;

(11) Raymond is listed in the Philadelphia phonebooks at the address of F. J. Schindler, and the two companies share the costs of this advertisement. See, Deposition, Schindler, pp. 5, 6;

(12) Raymond's employees have visited Schindler once or twice in the last four years for purposes of inventory checks. See, Deposition, Schindler, p. 7;

(13) Schindler occasionally purchases products from Raymond on a "floor-plan" arrangement under which it does not pay for them until they are sold, and, similarly, is not paid for them until it has sold them. See, Deposition, Schindler, pp. 14 and 16.

A consideration of these facts and of the relevant law of Pennsylvania indicates that the court does not have personal jurisdiction over the defendant.

■ Foreign corporations such as Raymond have been considered subject to the personal jurisdiction of Pennsylvania's courts on the basis that their Pennsylvania distributors are also their legal agents. The relevant standard is whether the foreign corporation exercises, " * * * substantial control over the business of the local distributor * * * ", Florio v. Powder Power Tool Corp., 248 F.2d 367, 372 (C.A. 3, 1957). Language used in the Pennsylvania Supreme Court's most recent opinion on this issue, referring to " * * * close collaboration with its distributors * * ", is to similar effect. Frisch v. Alexson Equipment Corp., 423 Pa. 247, 253, 224 A.2d 183 (1966).

■■ The plaintiff contends that the requisite collaboration is manifested here by the occasional visits of certain of Raymond's employees to Schindler, the listing of the defendant's name in the Philadelphia phonebook at the Schindler address, the defendant's supplying of catalogs to Schindler, and the occasional use of floor-plan financing arrangements. See supra, facts 12, 11, 6, 13 respectively. Even when considered all together,

however, these facts do not reflect such collaboration between Schindler and Raymond as to constitute the former an agent of the latter. Moreover, there are other facts which strongly indicate that Schindler represents Raymond in the capacity of an independent contractor, e. g. Schindler deals with a number of other products, Raymond exercises little control over Schindler's operation, and Schindler can not bind the corporation. These latter facts are most significant in determining the extent of collaboration between the corporation and its distributor. See generally, Cecere, supra, 208 Pa.Super. at p. 143, 220 A.2d 350; Rachelson, supra, 257 F.Supp. at pp. 258–259 and Rufo v. Bastian-Blessing Co., 405 Pa. 12, 17, 18, 173 A.2d 123 (1961); Miller v. Kiamesha-Concord, Inc., 420 Pa. 604, 618, 218 A.2d 309 (1966), and Namie v. DiGirolamo, 412 Pa. 589, 195 A.2d 517 (1963). Finally, the situation here is distinguishable from that in Frisch, supra, 423 Pa. at p. 252, 224 A.2d at p. 186, where the facts indicated that " * * * each distributor also develop(ed) sales [and] service outlets in Pennsylvania (for the corporation) * * *."

■ Raymond of course alternatively can be considered subject to personal jurisdiction here if it has actually sent into Pennsylvania for the purpose of doing business persons who are concededly its agents or employees. The standard for determining whether Raymond has so "entered" Pennsylvania is a strict one:

" * * * (The) distribution of products in Pennsylvania by the foreign corporation (is) * * * not sufficient basis for jurisdiction. * * * (T)he test * * * includes the 'entry' into the Commonwealth by the foreign corporation by the physical presence of agents or property." Cecere, supra, 208 Pa.Super. at p. 147, 220 A.2d at p. 356.

Thus the Court in Cecere felt constrained to find that the defendant was not doing business in Pennsylvania despite the fact that it had sold lamps and other furni-

ture here over a long period of time. *Cecere*, supra, 208 Pa.Super. at p. 144, 220 A.2d 350.

■ Employing this strict standard of "entry" it is clear that Raymond's activities in Pennsylvania are materially distinguishable from those of foreign corporations held in other cases to be subject to personal jurisdiction here. For example, in *Frisch*, supra, 423 Pa. at pp. 251, 252, 224 A.2d 183, the Court noted that the defendant occasionally sent its executives and other employees to Pennsylvania to visit customers, maintained two salaried employees in Pennsylvania who reviewed the functions of distributors and serviced the defendant's products, and had another employee who maintained liaison with another class of Pennsylvania customers. In Triangle Publications, Inc. v. Standard Plastic Products, Inc., 241 F.Supp. 611, 612 (D.C.Pa., 1965), the facts were that a representative of the defendant made at least several visits a year to Pennsylvania for the purpose of soliciting sales, and that the president of the foreign-corporation himself had visited Pennsylvania for this purpose. In contrast the facts here establish only that Raymond sent a service-representative to Pennsylvania once or twice over a four year period. See, supra, fact 12. Raymond evidently has pursued all other business negotiations with Schindler in New York. Accordingly, this Court can not hold that Raymond has entered Pennsylvania for any business purpose. See also, Yoffee v. Golin, 413 Pa. 154, 196 A.2d 317 (1964).

■ The Court has arrived at its conclusion that the defendant is not subject to personal jurisdiction here with reluctance for reasons expressed well by the Superior Court of Pennsylvania:

" * * * (A) manufacturer should be subject to jurisdiction when his product gives rise to a cause of action within a foreign jurisdiction, even though it had no other contact with the state. The foreign corporation's economic purpose and objective is to develop a market for its product in the foreign jurisdiction. * * * There is no unfairness, therefore, in requiring that it defend its product in a state in which it has sought pecuniary gain." *Cecere*, supra, 208 Pa.Super. at 148, 149, 220 A.2d at 356.

and:

" * * * (O)ur Commonwealth's right to assert jurisdiction over a foreign corporation should not depend on whether the corporation's representative in the state was technically an agent or an independent contractor. A more fruitful and proper determination of jurisdiction might include a consideration of the parties relative access to proof and witnesses, the relative hardship to the parties, the foreseeability of consequences in a foreign state, the nature of the injury, and the nature of the corporation's business and activities. Certainly, a flexible standard should be adopted which will test the reasonableness of subjecting a foreign corporation to jurisdiction in the forum state." Ibid, pp. 148, 149, 220 A.2d p. 357.

Pennsylvania's conservative approach to these jurisdictional problems has been criticized as well by other commentators. See, e. g. "Jurisdiction Over Unregistered Foreign Corporations Doing Business in Pennsylvania", Robert E. McKee, Jr., 27 Pittsburgh L.R. 879, 886 (1965–1966). It is most significant, however, that by denying allocatur the Supreme Court of Pennsylvania declined *Cecere's* obvious invitation to reconsider the law in this area.

In view of the current status of the relevant Pennsylvania law, this Court, in following the mandate of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), must conclude that the defendant is not subject to personal jurisdiction here. In view of the closeness of the question involved, however, it would be inappropriate to grant the defendant's motion to dismiss unconditionally since the Statute of Limitations on plaintiff's cause of action has already run and such dismissal would forever bar his claim. Accordingly, this

Court will withhold final disposition of defendant's motion to dismiss for a period of ten (10) days from the date of this opinion to permit plaintiff to file a motion to transfer this case to a district court having jurisdiction over the defendant. If the plaintiff files no motion to transfer in the next ten days the Court will dismiss this action.