## Garis v. Mouldings, Inc.

*Edmund P. Turtzo*, for plaintiff.
*Joseph F. Leeson*, for defendant.

FRANCIOSA, J., June 21, 1971.—On December 7, 1970, plaintiff filed a complaint in trespass naming as defendant Ponderosa Mouldings, Inc., a foreign corporation. The complaint alleged that Ponderosa, a manufacturer of wooden residential handrails, caused a defective and unsafe handrail to be sold and distributed to plaintiff.

Ponderosa then filed preliminary objections stating that it is an Oregon corporation which is not doing business in the Commonwealth; it requests that plaintiff's complaint be dismissed by reason of this court's lack of jurisdiction over it. An order of court was entered on April 1, 1971, directing plaintiff to take oral depositions or to file written interrogatories, since the necessary facts to determine the question of jurisdiction were not of record. In response to this order, plaintiff has stipulated to the use of oral depositions taken

on November 24, 1970, in a related case.[1] The objections are being considered, therefore, on the basis of the testimony adduced at that time.

From the depositions of Delbert Messinger, an officer of Bangor Lumber Co., Inc., and James G. Hallam, manager of Morgan Millwork's Harrisburg branch, it appears that the facts as to Ponderosa are as follows:

Ponderosa, an Oregon corporation not registered in Pennsylvania, has no office, plant, bank account, mailing address, telephone listing or other business facility within Pennsylvania. Also, it has no employes, agents or sales representatives who visit those dealing with its products in this State. Ponderosa's products are distributed and sold in Pennsylvania through an independent distributor.[2] We are convinced that prior to 1968 such a system of distribution by a foreign corporation was not sufficient for the purposes of jurisdiction. See Meench v. Raymond Corp., 283 F. Supp. 68.

At issue, however, is whether Ponderosa may be said to be "doing business" in this Commonwealth within the meaning of the Business Corporation Law of May 5, 1933, P. L. 364, sec. 1101, as amended, 15 PS §2011, subsec. C. In 1968, subsection C was amended so as to eliminate the requirement of "entry" and to add the following new sentence:

"For the purposes of this subsection the shipping of

[1] Plaintiff has brought a companion suit in trespass based on the same occurrence against Uliana Contractors, Inc. (the contractor installing the handrail), Bangor Lumber Co., Inc. (the Pennsylvania supplier) and Morgan Millwork Co., Inc. (a Maryland corporation distributing Ponderosa products in Pennsylvania). The companion case is designated as May term, 1970, no. 342.

[2] The distributor representing Ponderosa in this State is Morgan Millwork Co., Inc., a Maryland corporation, with branches in Harrisburg, Pa.; Baltimore, Md.; Washington, D. C.; Arlington and Portsmouth, Va.

merchandise directly or indirectly into or through this Commonwealth shall be considered the doing of such an act in this Commonwealth. Act of July 20, 1968 P. L. ——, No. 216 §54, 15 PS §2011."

Thus, for the purposes of determining jurisdiction of courts within this Commonwealth, the shipping of merchandise directly or indirectly into or through this Commonwealth has become the doing of such an act as shall constitute "doing business" in the Commonwealth. It is clear, therefore, that Ponderosa would be within reach of our legal process if the enlarged concept of jurisdiction over nonregistered foreign corporations is applicable to this case.

As the Supreme Court noted in Wenzel v. Morris Distributing Co., 439 Pa. 364, whether a corporation is "doing business" in a jurisdiction is a matter of fact to be resolved on an ad hoc or case-by-case basis and not by application of a mechanical rule.

Plaintiff has the burden of establishing that defendant corporation knew that some of its handrails would eventually end up in Pennsylvania. Plaintiff urges that deposition exhibit no. 2 indicates that Ponderosa has reason to know the handrails would be re-sold for ultimate use in Pennsylvania. The exhibit, Ponderosa's invoice, is sufficient to establish a direct shipment of "kiln dried Ponderosa pine mouldings and/or cut stock, lot #2: loaded on top, separated and marked for Lemoyne, Penn."

A shipment of goods indicates a conscious placement of those goods into the stream of commerce. Because the 1968 amendment is relatively new, no controlling Pennsylvania State court decision has been found which interprets its specific language. However, in the very recent case of Benn v. Linden Crane Co., 326 F. Supp. 995, the United States District Court for the Eastern District of Pennsylvania, opinion by Judge

Van Artsdalen, April 30, 1971, the Federal District Court was called on to interpret the meaning of the 1968 amendment. We adopt that portion of Judge Van Artsdalen's opinion noting the following:

" 'The manner in which the injury-producing defect came about has no impact on the question of jurisdiction: the jurisdictional act is not the creation of a defect, but the distribution of defective products in a national way. When a manufacturer voluntarily chooses to sell his product in a way in which it will be resold from dealer to dealer, transferred from hand to hand and transported from state to state, he cannot reasonably claim that he is surprised at being held to answer in any state for damages the product causes.'

"In the recent case of Duple Motor Bodies, Ltd., v. Hollingsworth, 417 F. 2d 231 (9th Cir., 1969), the ninth circuit interpreting a tortious act statute said (p. 235):

" 'We do not regard it as offensive to fair play or substantial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he himself has placed it, either directly or through the normal distributive channels of trade. If it is clearly foreseeable as a result of trade with a foreign state that injury from a defective product (if it occurs) would occur in that state, the hardship of defending the product in that state in our judgment must be assumed as an attribute of foreign trade.'

"The Amendment in question was adopted by the Pennsylvania legislature after the Supreme Court of Pennsylvania adopted the concept of strict liability as set forth in Section 402A, Restatement of Torts 2d (1965); Webb v. Zern, 422 Pa. 424, 220A 2d 853. It is reasonable to conclude that one of the purposes of this legislation was to make amenable to Pennsylvania jurisdiction those foreign corporations whose products cause damage or injury in Pennsylvania however circuitous their distributive chain may be."

For these reasons, we find that there were sufficient contacts between Ponderosa and Pennsylvania at the time this action was instituted to come within the broad constitutional limits of due process as set forth in *International Shoe Company v. State of Washington et al.*, 326 U. S. 310, and later cases adopting a liberal view of the "minimal contacts" test. Accordingly, defendant's preliminary objections are denied.

## ORDER

And now, June 21, 1971, defendant's preliminary objections are denied and dismissed and defendant is given leave to file an answer to plaintiff's complaint in trespass within 20 days if it so desires.