EMPIRE KOSHER POULTRY, INC.

v.

HEBREW NATIONAL KOSHER FOODS, INC.

Civ. A. No. 82–4335.

United States District Court, E.D. Pennsylvania.

Jan. 28, 1983.

---

Robert A. Swift, Kohn, Savett, Marion & Graf, Philadelphia, Pa., for plaintiff.

Barry Brett, Parker, Chapin, Flattau & Klimpl, New York City, Abraham C. Reich, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, Chief Judge.

On October 1, 1982, Empire Kosher Poultry, Inc. (Empire) filed a complaint in this court seeking to recover the purchase price of poultry and other food products delivered to defendant, Hebrew National Kosher Foods, Inc. (Hebrew National).

Empire, a Pennsylvania corporation with its principal place of business in Mifflintown, which is located in the Middle District of Pennsylvania, processes and sells poultry and other food products. Hebrew National, a New York corporation with its principal place of business in Maspeth, within the Eastern District of New York, distributes beef and poultry products to retailers. For some time, Hebrew National distributed Empire's products along with its own products.

On September 30, Empire terminated Hebrew National as a distributor[1] and Hebrew National rescinded a previously arranged wire transfer of $115,000 which was to be paid on a bill of $117,826.28. Empire filed suit on October 1. Hebrew National, alleging that Empire's action in terminating it as a distributor was part of a conspiracy to fix prices in violation of the antitrust laws[2] and, assertedly unaware of the existence of the instant action until October 12, filed an action on October 5 in the Eastern District of New York seeking damages, declaratory relief and an injunction barring Empire from terminating the distributorship. On October 22, Chief Judge Weinstein of the Eastern District of New York took the motion for a preliminary injunction under advisement, after considering the testimony of ten witnesses who had been deposed. On November 23, Chief Judge Weinstein denied Hebrew National's motion.

On November 3, Hebrew National filed motions with this court asking alternatively for: (1) dismissal for lack of personal jurisdiction; (2) a stay of this action pending the resolution of the preliminary injunction issue in New York; or (3) transfer of the case

---

1. Hebrew National submitted portions of several transcripts from the New York proceedings in support of its Motion to Dismiss, Stay, or Transfer. In these transcripts, Empire had advanced a variety of reasons for its termination of Hebrew National: Hebrew National's refusal to make timely payments; Hebrew National's failure to sell an adequate amount of Empire's products; deterioration of the business relationship in general; and Hebrew National's practice of selling Empire's products more cheaply in order to maximize the sales of Hebrew National's products.

2. Hebrew National contends that it was terminated because it sold Empire's products at a price lower than that charged by other distributors. Hebrew National contends it was able to do this because of the advantage it gained from being able to offer retailers a full line of products—its own, Empire's, and another line of Kosher poultry products.

to the Eastern District of New York because venue in this district is improper.

On November 12, Empire filed a motion for partial summary judgment, later amended to a motion for full summary judgment claiming $260,170 or alternatively $240,000, contending that Hebrew National had agreed to the amount due and owing Empire.

### Personal Jurisdiction

I must first address the issue of this court's power to entertain the instant action. Hebrew National maintains that this court lacks personal jurisdiction over it because the cause of action does not arise from its shipment into and sale of merchandise in this forum. Hebrew National's sales of its products in Pennsylvania amounted to about $3,000,000 in 1981 accounting for approximately 3% of its gross sales. It ships merchandise to stores in the Philadelphia area on a regular basis and has a representative who services Philadelphia retailers on a weekly or monthly basis. It contends that these contacts are too minimal to comport with the due process requirements for general jurisdiction as set forth in *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny.

The issue as it has been defined in Pennsylvania is whether the defendant's business activities are "so continuous and substantial as to make it reasonable for the state to exercise such jurisdiction." *Bork v. Mills,* 458 Pa. 228, 231–2, 329 A.2d 247 (1974). In my view the weekly shipment of merchandise into the Philadelphia area, plus the regular servicing of Philadelphia clients, and a total volume of sales in Pennsylvania exceeding $3,000,000 constitute sufficiently continuous and substantial activities to support jurisdiction.[3] The motion to dismiss for lack of jurisdiction will be denied.

### Venue

Hebrew National also argues that venue is inappropriate in the Eastern District of Pennsylvania, pointing out that a higher level of contacts with the forum is necessary to support venue than is required for jurisdiction. Empire argues that venue is appropriate under 28 U.S.C. § 1391(c)[4] since Hebrew National both is doing business and is licensed to do business in this judicial district.

Empire has submitted a certification[5] from the Pennsylvania Department of State that a Certificate of Authority was issued to Hebrew National on May 1, 1970 and that certificate has not been withdrawn. Empire contends that the certificate is dispositive of the "licensed-to-do-business" issue and, therefore, of the venue issue. *DiCiano v. Western Contracting Corp.,* 224 F.Supp. 803 (E.D.Pa.1963). Hebrew National, on the other hand, points out that the document bears on its face the notation "OUT OF EXISTENCE WITH THE DEPARTMENT OF REVENUE ON JANUARY 31, 1980," and contends that this means that Hebrew National is no longer licensed to do business in Pennsylvania. That is not so. The procedure for withdrawal from certification with the Department of State, 15 P.S. § 2015 (Purdon), is separate and distinct from the one for withdrawal from the Department of Revenue,

---

**3.** The fact that Hebrew National is licensed to do business in Pennsylvania, as discussed under *Venue,* is an additional factor supporting jurisdiction.

**4.** 28 U.S.C. § 1391:

(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

**5.** Although the record in this case consists of this document, the complaint, affidavits and depositions, it is still proper to consider defendant's motion as one to dismiss rather than one for summary judgment because the basis for the motion is the lack of personal jurisdiction. *Meench v. Raymond Corp.,* 283 F.Supp. 68 (E.D.Pa.1968).

61 Pa.Code § 151.11. Empire has submitted an affidavit from the Director of the Bureau of Corporations, Department of State, stating that Hebrew National has not complied with the withdrawal procedure and is, therefore, currently licensed to do business in Pennsylvania with its registered office in Philadelphia. That affidavit has not been controverted by Hebrew National and is dispositive of this issue.

The same issue was recently considered in this district, *Fischman v. Fischman,* 470 F.Supp. 980 (E.D.Pa.1979), and, while there was an additional basis supporting jurisdiction in *Fischman,* the court held that a corporation's withdrawal from the Department of Revenue did not comply with the withdrawal requirements of § 2015 and the court still had jurisdiction over the corporation.

■ Hebrew National is licensed to do business in Pennsylvania. Because that licensing satisfies the venue requirement under 28 U.S.C. § 1391(c), I will not consider Empire's other contention that venue is also appropriate based on the volume and quality of defendant's contacts with this district. Defendant's motion to transfer for improper venue will be denied.

### Stay

Hebrew National urged that this action should be stayed pending resolution of its request for a preliminary injunction in the antitrust action in the Eastern District of New York. Hebrew National relied particularly on the remarks of Chief Judge Weinstein which implied that he would not grant the requested relief without also requiring Hebrew National to pay Empire all amounts due—the same moneys at issue in the instant action. On November 23, Chief Judge Weinstein denied Hebrew National's request for a preliminary injunction. There is, therefore, no longer any reason to stay

this action and Hebrew National's motion to stay will be denied.

### Transfer

Although it can no longer rely on the imminent resolution of the payment issue in the New York action, Hebrew National continues to maintain that that action and the instant one are inextricably intertwined and this case should, therefore, be transferred to New York. It has expressed concern that Empire is losing money and may not be able to satisfy any judgment which might ultimately be awarded against it in the antitrust action. While such a factor is obviously of concern to Hebrew National, it is not a valid reason to hold up resolution of the claim for moneys due and owing. In *Lewis v. Seanor Coal,* 382 F.2d 437, 441 (3d Cir.1967), *cert. denied,* 390 U.S. 947, 88 S.Ct. 1035, 19 L.Ed.2d 1137 (1968), the court held that "[t]o permit avoidance of payments required under the contract would go beyond the remedy prescribed by the antitrust statute...." The court recognized one exception to this rule—if the enforcement of the contract would condone the precise conduct made unlawful by the antitrust act, the contract should not be enforced. No such situation has been alleged here.

■ Hebrew National has not demonstrated that this action is intertwined with the one in the Eastern District of New York. The action here is a straightforward one for moneys due and owing. The case in New York is potentially complex and attenuated antitrust litigation.[6] Proof of the one claim is entirely independent of the other. I see no reason to transfer this case to New York.

### Summary Judgment

Consideration of Empire's motion for summary judgment will be deferred until Hebrew National files its Answer based on

---

**6.** Hebrew National has not yet filed an Answer in this case. Until it does so, it is premature to consider whether the claims advanced in New York and in Pennsylvania are in the nature of compulsory counterclaims under Federal Rule of Civil Procedure 13(a).

my promise to that effect made during a telephone conference call on December 22. Had I not made such a promise, I would be strongly tempted to grant Empire's motion at this time. Hebrew National has filed the affidavit of its Vice President—Finance which does not, even indirectly, address the basic issue in the summary judgment motion—the amount due Empire. At most, this affidavit hints at a few possible, minor discrepancies from the amount claimed by Empire. Empire has, however, already provided a contingency to cover these minor amounts by moving alternatively for $260,170 or for $240,000 to accommodate amounts claimed by Hebrew National. I expect that, in the extra time provided, Hebrew National will determine the exact amounts that are in dispute and file an affidavit responsive to Empire's allegations.

### ORDER

This 28th day of January, 1983, upon consideration of defendant's Motion to Dismiss, Stay, or Transfer and plaintiff's Motion for Summary Judgment, it is ORDERED:

1. Defendant's Motion to Dismiss for lack of personal jurisdiction is DENIED;

2. Defendant's Motion to Transfer because of improper venue is DENIED;

3. Defendant's Motion to Stay is DENIED as moot;

4. Consideration of plaintiff's Motion for Summary Judgment is deferred pending the filing of defendant's Answer.